NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0597n.06

Case No. 19-5402

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JULIE WRIGHT, )
      Plaintiff-Appellant, )
v. )
  )
CELLULAR SALES MANAGEMENT )
GROUP, LLC, )
      Defendant-Appellee. )
  )

**FILED**

Dec 06, 2019

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

BEFORE: ROGERS, STRANCH, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. In her three months at Cellular Sales Management Group, Julie Wright violated the workplace violence policy twice. She also made sexual harassment complaints about her supervisor twice. The question is whether CSMG fired Wright for the former or the latter. The district court granted summary judgment to CSMG. We affirm.

Things were rocky from the start. Early on, managers at CSMG felt that Wright was "[n]ot working out" at the company. R. 32-1, Pg. ID 149. She had issues keeping up and communicating. At a meeting about how to improve, Wright "became agitated, stood up and hit the desk." *Id.* at 138.

And things only got rockier from there. Wright complained to the department head that her direct supervisor (a heterosexual woman, like herself) had given her a "flirtatious" look while bending at the waist about ten feet away. *Id.* at 301. The department head suspected that Wright complained to deflect from her performance issues, but reassured Wright that the company wanted her to feel safe. Wright later lodged a second complaint. She said that her supervisor bent over

with her hands on her thighs and whispered an expletive comment ("F___ me") after an error popped up on a computer screen. *Id.* Wright believed that comment was sexual and reported it. The department head told Wright she may have misinterpreted the comment but agreed to talk to the supervisor about her language.

A couple of days later, things finally came to a head. Wright got into a public fight with a co-worker. Wright began shouting at her co-worker in a glass conference room. The two soon entered a shouting match. Eyewitnesses noted that Wright stood over her seated co-worker. A nearby supervisor interrupted and reported the fight. The company immediately investigated and decided to fire Wright for workplace violence.

Wright responded by suing CSMG. She alleged that they fired her in retaliation for her harassment complaints. The district court reviewed the record and granted summary judgment to CSMG.

We review that decision de novo. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). That means we apply the same test as the district court. We affirm the grant of summary judgment where the record, viewed in the light most favorable to Wright, shows there are no genuine disputes of material fact. *Id.* That is, if there is not enough "significant probative evidence" for a reasonable jury to return a verdict for Wright. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (internal quotation marks omitted).

Since Wright did not present direct evidence of retaliation, the *McDonnell Douglas* framework applies. This requires Wright to first present a prima facie case of retaliation by a preponderance of the evidence and then show that any legitimate reason for firing was mere pretext. *Id.* at 767.

So is CSMG entitled to judgment as a matter of law? Or does a jury need to weigh in on factual disputes?

CSMG is entitled to judgment as a matter of law. First, Wright has not presented a genuine dispute of material fact on whether her complaints were the but-for cause of her firing—a requirement of a prima facie case of retaliation. Second, even if Wright did establish a prima facie case of retaliation, she has not shown a genuine dispute about whether CSMG's stated reason was mere pretext. Thus, summary judgment was proper.

*Prima Facie Case.* To make a prima facie case of retaliation, Wright must show that: (1) she engaged in protected activity under Title VII, (2) CSMG knew about the protected activity, (3) CSMG took a "materially adverse" action against her, and (4) the adverse action was causally connected to her protected activity. *Laster*, 746 F.3d at 730 (cleaned up). To establish the final element (the only one in dispute), Wright must show that CSMG would not have fired her if she had not complained about sexual harassment. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Wright bases her theory of causation on "temporal proximity." Because CSMG fired her just days after she raised the second sexual harassment complaint, she says, the timing itself is evidence that her complaint caused the firing.

Our circuit has given mixed guidance on inferring causation from closeness in time. On one hand, we have said that temporal proximity can be enough to show causation. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505–06 (6th Cir. 2014); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525–26 (6th Cir. 2008). On the other hand, we have "repeatedly cautioned against inferring causation based on temporal proximity alone." *Wasek v. Arrow Energy Servs.,*

*Inc.*, 682 F.3d 463, 471–72 (6th Cir. 2012); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010).

Either way, Wright's argument does not prevail. Even if temporal proximity alone could show causation here, an intervening event interrupted the causal chain. Between the time Wright complained and the time of her termination, she got in a public shouting match with a co-worker. And company policy prohibited "any conduct, verbal or physical, which intimidates, endangers, or creates the perception of intent to harm[.]" R. 32-1, Pg. ID 156. So Wright violated that policy. That means CSMG had "an intervening legitimate reason to discipline [her], and that reason dispels an inference of retaliation based on temporal proximity." *Wasek*, 682 F.3d at 471–72.

And Wright provides no other material facts that support an inference of causation. Besides timing, she points to testimony from Wright's supervisor's estranged ex-husband. He testified that Wright's supervisor told him the company "had figured out a way to get rid of the troublemaker." R. 34-7, Pg. ID 554. The district court described this testimony as "utterly irrelevant." R. 52, Pg. ID 783. The district court was right. Not only was the ex-husband not involved in the decision to fire Wright—the supervisor *herself* was not involved. Everyone agrees that Wright's supervisor was neither involved in the investigation of the fight nor consulted about whether to fire Wright after the fight. Indeed, she was not even told of the planned termination until right before it happened. So any speculations about the company's possible motivations she may have relayed to her ex-husband are immaterial. Thus, Wright has not provided facts that would allow a jury to find that her complaints were the but-for cause of her termination. The district court was right to grant summary judgment.

*Pretext.* Even if Wright had made a prima facie case, she must also show that CSMG's nondiscriminatory explanation is pretext. To show pretext, Wright must show facts from which a

reasonable jury could find that her workplace violence was not the real reason CSMG fired her. *EEOC*, 782 F.3d at 767. Wright has not shown such facts. The facts she does cite are either rebutted by other undisputed facts or immaterial.

1. *The emails.* After Wright's fight in the conference room, her department head wrote up an email reporting the incident to higher-ups. Wright says that the department head exaggerated Wright's actions. As evidence, Wright points to a different email an eyewitness sent to the department head about the fight. In that email, Wright's actions sound less severe. The eyewitness didn't mention that Wright was "leaning forward," "had an aggressive stance," or "appeared close to physical contact," which are details that the department head's email included. *Compare* R. 34-5, Pg. ID 539 (eyewitness email), *with* R. 32-1, Pg. ID 221 (department head email).

The only problem with Wright's argument? It ignores that the initial email was only *one* of the many eyewitnesses the department head heard from. The other two eyewitnesses *did* say all those things about Wright's actions, and the department head rightly attributed those details to them. So any inconsistency between the two emails does not mean the department head embellished or fabricated details. It means she did exactly what she should have done—talked with multiple eyewitnesses about what happened and relayed their reports accurately.

2. *Testimony of supervisor's ex-husband.* Here again, Wright relies on the testimony of Wright's supervisor's estranged ex-husband. But this testimony was a statement by a non-decisionmaker, which cannot alone be used to prove pretext. *See EEOC*, 782 F.3d at 768. In fact, the ex-husband's testimony is two steps removed from actual decision-making. Neither he nor his ex-wife (Wright's supervisor) were involved in the decision to fire Wright. In a scenario where a supervisor's actions were only *one* step removed, our circuit held that the plaintiff provided no material facts. *Id.* True, a supervisor will always have some effect on an employee's termination,

since she supervises overall performance. *Id.* "But we do not define 'decisionmaker' at such a high level of generality." *Id.* The ex-husband's testimony is immaterial.

3. *Poor performance.* Wright argues that she was not on the brink of being fired for poor performance. That may or may not be true. Either way, it is immaterial. CSMG fired her for workplace violence, not poor performance.

4. *The other co-worker.* Wright mentions in passing that CSMG did not fire the other co-worker in the conference room fight. Fair enough. But to show pretext, Wright must say more than that. She has not, so she forfeited that argument.

***

In the end, Wright has not shown facts on which a reasonable jury could find in her favor. Causation and pretext provide two separate grounds for granting summary judgment.

We affirm.